UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DAWN R. CLINE,

        Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of the Social Security
Administration,

        Defendant.

CASE NO. 10cv5865-RJB-JRC

REPORT AND
RECOMMENDATION ON
PLAINTIFF'S COMPLAINT

NOTING DATE: October 28, 2011

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed. (See ECF Nos. 10, 11, 14).

For the reasons discussed below and based on the relevant record, the Court concludes that the Administrative Law Judge ("ALJ") in this matter did not evaluate

properly the medical evidence and erroneously failed to discuss the lay evidence provided by plaintiff's friend of twenty years. The ALJ also failed to evaluate properly the lay opinion evidence provided by Ms. Pickard. For these reasons, this matter should be reversed and remanded to the administration for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff, DAWN R. CLINE, was thirty-one years old on her alleged disability onset date of February 2, 2006 (Tr. 125). She suffered sexual abuse at age 3 or 4, and was raped at age 18 (Tr. 224). Plaintiff also reported being abused by her husband (Tr. 223). In approximately 1997, plaintiff was assaulted by a disturbed person at a grocery store and has developed panic attacks since then (Tr. 27, 222).

Plaintiff worked full time at a copy center from July 9, 2008 through February, 2009 (Tr. 33). In the middle of January, 2009, plaintiff was at work alone and was disturbed and scared by a man talking to himself outside of the store (Tr. 34). She also testified that she had difficulties with a co-worker at the store (id.). According to plaintiff's testimony, the co-worker told plaintiff that if she had problems getting scared with strangers that she should have disclosed that fact during the interview process (Tr. 35-36). Plaintiff testified that she quit this job because she had "such a hard time dealing with her" (Tr. 36). She didn't look for another job because she thought that there were no other jobs in her area that she would be comfortable working (Tr. 38-39).

Plaintiff testified that she cannot work because she is scared of homeless people and people whom she thinks might be crazy (Tr. 43). When she is near people talking on

their cell phones through an ear piece, she gets panic attacks (id.). She also testified that she has a hard time dealing with the stress of other people and any type of confrontation (id.). She testified that such experiences overwhelm her and she "can't even do simple things" (id.).

Plaintiff testified that she didn't take any medication for anxiety because she was afraid that taking the medication would keep her from knowing when to be afraid of something bad happening (Tr. 45). She felt the need "to know what's going on around" her (Tr. 46). Plaintiff also testified that she tried therapy and that it helped her be able to start working at the copy center (Tr. 45). She indicated that she learned some things in therapy that helped, but also testified that attending therapy caused her to focus on her issues and made her feel more anxious (Tr. 48-49).

## PROCEDURAL HISTORY

Plaintiff protectively filed for Social Security disability insurance benefits on March 19, 2007 (Tr. 125-27, 183-85). She alleged disability due to post traumatic stress disorder and anxiety (Tr. 146). Her application was denied initially and on reconsideration (Tr. 77-79, 86-87). Plaintiff's requested hearing was held on July 21, 2009 before Administrative Law Judge Mattie Harvin-Woode (Tr. 23-74). On September 29, 2009, the ALJ issued a written decision finding that plaintiff was not disabled pursuant to the Social Security Act (Tr. 11-22).

On September 23, 2010, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-3). See 20 C.F.R. § 404.981. On November 23, 2010, plaintiff filed a

complaint in this Court seeking judicial review of the ALJ's written decision (ECF No. 1). In her Opening Brief, she contends that the ALJ erred by failing to consider properly lay opinion evidence and by failing to consider properly the medical evidence (see ECF No. 10, pp. 1-2).

STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); see also Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering the plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing* Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting* Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see also Richardson v. Perales, 402 U.S. 389, 401 (1971). The Court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing* Moore v. Comm'r of the Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

However, "regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision and [the courts] confine our review to the reasons supplied by the ALJ." Steele v. Barnhart, 290 F.3d 936, 941(7th Cir. 2002) (*citing* SEC v. Chenery Corp., 318 U.S. 80, 93-95 (1943) (other citations omitted)); see also Stout v. Commissioner of Soc. Sec., 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted); Griemsmann v. Astrue, 147 Soc. Sec. Rep. Service 286, 2009 U.S. Dist. LEXIS 124952 at *9 (W.D. Wash. 2009) (*citing* Blakes v. Barnhart, 331 F.3d 565, 569 (7th Cir. 2003)). For example, "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony." Stout v. Commissioner of Soc. Sec., 454 F.3d 1050, 1054 (9th Cir. 2006) (*citing* Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)).

DISCUSSION

1. The ALJ committed harmful error in failing to address lay opinion evidence.

Pursuant to the relevant federal regulations, in addition to "acceptable medical sources," that is, sources "who can provide evidence to establish an impairment," see 20 C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members, who are defined as "other non-medical sources," see 20 C.F.R. § 404.1513 (d)(4), and "other sources" such as nurse practitioners and naturopaths, who are considered other medical sources, see 20 C.F.R. § 404.1513 (d)(1). See also Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223-24 (9th Cir. 2010) (*citing* 20 C.F.R. § 404.1513(a), (d), (d)(3)). An ALJ may disregard opinion evidence provided by "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so." Turner, *supra*, 613 F.3d at 1224 (*citing* Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001)); see also Van Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). This is because "[i]n determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1053 (9th Cir. 2006) (*citing* Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)).

Recently, the Ninth Circuit characterized lay witness testimony as "competent evidence," again concluding that in order for such evidence to be disregarded, "the ALJ must provide 'reasons that are germane to each witness.'" Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (*quoting* Van Nguyen, *supra*, 100 F.3d at 1467). In this recent Ninth Circuit case, the court noted that an ALJ may not discredit "lay testimony as not

supported by medical evidence in the record." Bruce, 557 F.3d at 1116 (*citing* Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996)). In addition, testimony from "other non-medical sources," such as friends and family members, see 20 C.F.R. § 404.1513 (d)(4), may not be disregarded simply because of their relationship to the claimant or because of any potential financial interest in the claimant's disability benefits. Valentine v. Comm'r SSA, 574 F.3d 685, 694 (9th Cir. 2009).

   a. Ms. Joy E. Pickard, M.A., other medical source

As noted by the ALJ, plaintiff "attended therapy sessions in 2007 with Joy E. Pickard, M.A." ("Ms. Pickard") (Tr. 20). The ALJ noted the opinion of Ms. Pickard that plaintiff could work at least part time and should continue therapy (id.). The ALJ noted that Ms. Pickard's report was based on several months of therapy sessions with plaintiff, and found that her report was "consistent with the medical evidence and the claimant's reported activities" (id.). Because of these reasons, the ALJ gave the report of Ms. Pickard "significant weight" (id.).

However, the ALJ failed to discuss the opinion of Ms. Pickard that plaintiff "may experience lack of concentration or stress when interacting with aggressive people or in a confrontive (sic) or extremely stressful environment" (Tr. 301). Although defendant contends that the ALJ's findings are "fully consistent" with this assessment, as the ALJ did not place any limitations on plaintiff's ability to concentrate when determining plaintiff's residual functional capacity and as the ALJ found that plaintiff suffered only mild difficulties with her ability to concentrate, the Court does not agree with defendant's contention (see Tr. 18; see also Response, ECF No. 11, pp. 11-12). Simply limiting

REPORT AND RECOMMENDATION - 7

plaintiff to occasional contact with the general public and small groups of coworkers does not appear to take into consideration the opinion of Ms. Pickard that plaintiff may suffer lack of concentration in certain circumstances. Not only may plaintiff suffer such lack of concentration, according to the opinion by Ms. Pickard, when having occasional contact with members of the general public or coworkers who become confrontational or aggressive, but also, when having contact with supervisors, with whom contact is not limited. Although an ALJ "need not discuss *all* evidence presented." the ALJ must explain why "significant probative evidence has been rejected." <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam) (*quoting* <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3d Cir. 1981)). The Court finds that the ALJ did not do so here.

   b. Ms. Elizabeth Allen, other non-medical source

     Ms. Elizabeth Allen ("Ms. Allen") was a friend of plaintiff for twenty years and submitted an opinion regarding plaintiff's functional abilities (Tr. 162-70). Ms. Allen indicated that plaintiff's mental impairments affected plaintiff's concentration and her ability to complete tasks, follow instructions and get along with others (Tr. 167). Ms. Allen also opined that plaintiff's "PTSD and panic attacks affect [and] overwhelm her and she is unable to do anything except deal with those conditions until the panic or fear subsides" (<u>id.</u>). She assessed that plaintiff's ability to pay attention was affected when she had panic attacks (<u>id.</u>).

     The ALJ failed to discuss the lay opinion evidence provided by Ms. Allen. According to the Ninth Circuit, an ALJ "must consider lay witness testimony concerning

a claimant's ability to work." Stout, supra, 454 F.3d at 1053. Therefore, the Court finds that the ALJ's failure to do so here was legal error. See id. As mentioned previously, the ALJ found that plaintiff suffered only mild difficulties with her ability to concentrate (see Tr. 17). In addition, "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout, supra, 454 F.3d at 1056 (reviewing cases). As the Court cannot so conclude with confidence, the legal error by the ALJ in failing to consider the lay opinion by Ms. Allen was not harmless error. See id.

    2.  <u>The ALJ did not evaluate properly the medical evidence</u>.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995) (*citing* <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1396 (9th Cir. 1991); <u>Pitzer v. Sullivan</u>, 908 F.2d 502, 506 (9th Cir. 1990)). Even if the opinion of an examining physician or psychologist is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." <u>Lester</u>, supra, 81 F.3d at 830-31 (*citing* <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1043 (9th Cir. 1995)). In addition, the ALJ must explain why her own interpretations, rather than those of the doctors, are correct. <u>Reddick</u>, supra, 157 F.3d at 725 (*citing* <u>Embrey v. Bowen</u>, 849 F.2d 418, 421-22 (9th Cir. 1988)).

In general, more weight is given to a treating medical source's opinion than to the opinions of those who do not treat the claimant. Lester, supra, 81 F.3d at 830 (*citing* Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, supra, 81 F.3d at 830 (citations omitted); see also 20 C.F.R. § 404.1527(d). A non-examining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion by an examining physician or psychologist. Lester, supra, 81 F.3d at 831 (citations omitted). However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." Tonapetyan, supra, 242 F.3d at 1149 (*citing* Magallanes, supra, 881 F.2d at 752). "In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." Van Nguyen v. Chater, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing* Lester, supra, 81 F.3d at 831).

a. Dr. Kimberly Wheeler, Ph.D. ("Dr. Wheeler"), examining psychologist

Dr. Wheeler examined plaintiff on June 22, 2006 and performed a Mental Status Examination (Tr. 210-17). Dr. Wheeler opined that plaintiff was markedly impaired regarding her verbal expressions of anxiety or fear and diagnosed plaintiff with panic disorder and post traumatic stress disorder (Tr. 211). Dr. Wheeler opined specifically that plaintiff suffered functional limitations in her ability to perform on a normal day to day work basis in multiple areas of social functioning and in her cognitive ability to exercise judgment and make decisions (Tr. 212). Dr. Wheeler opined that plaintiff was an

excellent candidate for therapy, but noted plaintiff's reluctance to enlist help due to her feeling that "she should be able to do it on her own" (Tr. 213). She opined specifically that plaintiff was seriously disturbed (id.). Dr. Wheeler recommended counseling and that plaintiff take part in a sleep study (Tr. 216).

The ALJ included the following her written decision:

> As for the opinions evidence, the report of Kimberly Wheeler, PH.D. is given little weight. Dr. Wheeler opined that the claimant's mental health symptoms make her "seriously disturbed" (internal citation to Ex. 1F/4). There is no indication that she reviewed the claimant's medical records, and instead based her report solely on the claimant's subjective complaints. Dr. Wheeler did opine that the claimant was an excellent candidate for therapy (internal citation to Ex. 1F/4). Because her opinion of the claimant's mental limitation is based on the claimant's subjective complaints, it is given little weight.

(Tr. 19).

Although there is no indication in Dr. Wheeler's report that she reviewed plaintiff's medical records, there also is no indication that she did not review plaintiff's medical records. The ALJ gave little weight to Dr. Wheeler's opinion because the ALJ found that Dr. Wheeler's opinion was "based on the claimant's subjective complaints" (id.). There is no evidence in support of this conclusion by the ALJ, in fact, there exists evidence to the contrary.

The Court notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford

University Press 1993). "Like the physical examination, the Mental Status Examination is termed the *objective* portion of the patient evaluation." Id. at 4 (emphasis in original).

As noted, Dr. Wheeler explicitly conducted a Mental Status Examination on plaintiff (see Tr. 210-16). Therefore, substantial evidence supports a finding that Dr. Wheeler based her opinion regarding plaintiff's ability to function on the objective evidence gleaned from this Mental Status Examination. The ALJ's conclusion that Dr. Wheeler based her opinion solely on plaintiff's subjective complaints is not based on substantial evidence in the record.

The Mental Status Examination generally is conducted by medical professionals skilled and experienced in psychology and mental health. Although "anyone can have a conversation with a patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's 'conversation' to a 'mental status examination.'" Trzepacz, supra, The Psychiatric Mental Status Examination 3. A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences, intellect and personality" (id. at 4), and, in part, because it is not uncommon for a person suffering from a mental illness to be unaware that her "condition reflects a potentially serious mental illness." Van Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996).

Here, trained psychologist Dr. Wheeler conducted a Mental Status Examination and gave specific opinions regarding plaintiff's ability to function in the workplace. The residual functional capacity formulated by the ALJ here demonstrates a different opinion

regarding plaintiff's abilities. However, when an ALJ seeks to discredit a medical opinion, she must explain why her own interpretations, rather than those of the doctors, are correct. Reddick, supra, 157 F.3d at 725; see also Blankenship, supra, 874 F.2d at 1121 ("When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation") (quoting Poulin v. Bowen, 817 F.2d 865, 873074 (D.C. Cir. 1987)). The ALJ here did not explain sufficiently why her opinion was more correct than the opinion of Dr. Wheeler. See Reddick, supra, 157 F.3d at 725.

    b.  Dr. Paul Michels, M.D. ("Dr. Michels"), examining psychiatrist

Dr. Michels examined plaintiff on July 2, 2007 (Tr. 222-26). The ALJ gave great weight to much of the opinion offered by Dr. Michels (Tr. 20). However, the ALJ did not give great weight to the opinion of Dr. Michels that plaintiff's depression and anxiety likely would "create occasional to frequent difficulty completing specific tasks in a timely or consistent manner" (see Tr. 20, 226). The ALJ found that this opinion by Dr. Michels was inconsistent with plaintiff's college enrollment as well as being inconsistent with plaintiff's ability to work at the copy center subsequent to Dr. Michel's evaluation (Tr. 20).

Plaintiff admits improvement subsequent to Dr. Michels' evaluation and admits her ability to work (see Tr. 27; see also Opening Brief, ECF No. 10, p. 12). Plaintiff worked for seven months from approximately July, 2008 through February, 2009 (Tr.

27). She testified that she worked full time as a customer service representative at a copy center (Tr. 32). Plaintiff testified that she quit this job due to difficulties dealing with a co-worker after a person outside of the copy center scared her and she locked the door during business hours (Tr. 33-36). The record provides substantial evidence for a finding that plaintiff was able to work in 2008 and that any functional limitations she had with completing specific tasks in a timely or consistent manner did not keep her from doing her job and did not cause her to quit this job.

For this reason and based on the relevant record, the Court concludes that the ALJ's finding that Dr. Michel's opinion that plaintiff's depression and anxiety likely would "create occasional to frequent difficulty completing specific tasks in a timely or consistent manner" was inconsistent with plaintiff's subsequent work experience at the copy center was specific and legitimate and supported by substantial evidence in the record. See Lester, supra, 81 F.3d at 830-31.

    c.  Dr. Anita Peterson, Ph.D. "(Dr. Peterson"), non-examining, state agency psychologist

Dr. Peterson reviewed plaintiff's record and prepared a mental residual functional capacity assessment (Tr. 245-48). According to her assessment, plaintiff suffered from moderate limitations in multiple areas with respect to sustained concentration and persistence (Tr. 245-46). She also found that plaintiff suffered from moderate limitations in multiple areas of social interaction as well as finding that plaintiff suffered from marked limitation in her ability to interact appropriately with the general public (Tr. 246). Dr. Peterson also opined that plaintiff suffered from moderate limitation in her ability to

respond appropriately to changes in her work setting (id.). Although the ALJ gave great weight to Dr. Peterson's assessment, she did not address these particular opinions regarding plaintiff's specific functional limitations (see Tr. 20).

A vocational expert testified at plaintiff's hearing (Tr. 67-73). The vocational expert testified specifically that if plaintiff suffered from functional limitations to the degree assessed by Dr. Peterson, that plaintiff would not be able to maintain any competitive employment anywhere (Tr. 71-72, 245-46). Therefore, these particular functional limitations as assessed by Dr. Peterson are significant and probative to the ultimate issue of whether or not plaintiff was disabled.

Although an ALJ "need not discuss *all* evidence presented." the ALJ must explain why "significant probative evidence has been rejected." Vincent, supra, 739 F.2d at 1394-95. Although defendant contends that the ALJ properly incorporated Dr. Peterson's opinion into the residual functional capacity assessment, as the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act, it is clear that the ALJ did not credit fully these particular assessments of plaintiff's functional limitations and rejected them, at least in part (see Response ECF No. 11, p. 8).

According to Social Security Ruling 96-8p, if the residual functional capacity assessment of an ALJ "conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Social Security Ruling 96-8p, 1996 SSR LEXIS 5, at * 20. If the ALJ here had adopted Dr. Peterson's opinions regarding the degree of plaintiff's specific functional limitations, according to the testimony of the vocational expert, plaintiff would not have been able to maintain any competitive

employment anywhere (Tr. 71-72, 245-46). Therefore, the ALJ was required to explain why these aspects of Dr. Peterson's opinion were not adopted. See Social Security Ruling 96-8p, 1996 SSR LEXIS 5, at * 20. In addition, the ALJ must explain why significant, probative evidence was rejected. See Vincent, supra, 739 F.2d at 1394-95. For these reasons and based on the relevant record, the Court concludes that the ALJ here did not evaluate properly the opinion of Dr. Peterson.

CONCLUSION

The ALJ committed harmful legal error by failing to consider the lay opinion evidence provided by plaintiff's friend of twenty years as well as by failing to consider properly the lay opinion evidence provided by Ms. Pickard. In addition, although the ALJ considered properly the opinion by Dr. Michels, the ALJ did not consider properly the medical opinion evidence provided by Dr. Wheeler or Dr. Peterson.

Based on these reasons and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** to the administration for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. See 28 U.S.C. § 636(b)(1)(C).

Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on October 28, 2011, as noted in the caption.

Dated this 6th day of October, 2011.

J. Richard Creatura
United States Magistrate Judge